# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Doe v. Lawrence Hall Youth Services*, 2012 IL App (1st) 103758**

---

| | |
|---|---|
| Appellate Court Caption | JOHN DOE, a Minor, by his Father and Next Friend, RICHARD DOE, Plaintiff-Appellant, v. LAWRENCE HALL YOUTH SERVICES, an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-3758 |
| Filed | January 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed an action alleging negligent supervision and intentional infliction of emotional distress in connection with the alleged improper sexual relationship one of defendant's employees had with a minor student defendant accepted into its residential treatment program for children with emotional, behavioral and learning challenges, since the school was operated pursuant to the Illinois School Code, section 34-84a of the School Code conferred *in loco parentis* status on defendant's teachers and staff, which conferred immunity from liability for negligence relating to conduct with the children in the absence of proof of wilful or wanton misconduct, the allegations made against the teacher could not be imputed to defendant, the conduct occurred off the school grounds and was beyond the scope of the teacher's employment, and plaintiff expressly waived the argument that he alleged wilful and wanton misconduct via the claim of intentional infliction of emotional distress. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-004313; the Hon. Drella Savage, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Edmund J. Scanlan, of Chicago, for appellant. |
| | Robert Mark Chemers, Richard M. Waris, Edward J. Aucion, and Sara Jane Brundage, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Presiding Justice Lavin and Justice Sterba concur in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff John Doe, by his father and next friend Richard Doe, appeals from orders of the trial court dismissing with prejudice various counts of his complaint against defendant Lawrence Hall Youth Services pursuant to sections 2-619 and 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619, 2-615 (West 2008)). We affirm.

¶ 2                    BACKGROUND

¶ 3    Defendant is a residential private school providing services to children with severe emotional, behavioral, and learning challenges. Its program is a 24-hour-per-day, 7-day-per-week therapeutic treatment program. Defendant is registered and funded by the Illinois State Board of Education and operates its school pursuant to the Illinois School Code (105 ILCS 5/24-24 (West 2010)). In September 2007, defendant voluntarily accepted minor plaintiff John Doe into its school and residential treatment program. Later, during the years of 2008 to 2009, defendant employed Linda Pithyou as a teacher in its treatment, education, and residential program. During her employment, Pithyou allegedly engaged in an improper sexual relationship off school grounds.

¶ 4    Defendant maintained rules and regulations for children in its program, including establishing curfews and prohibiting alcohol and drug use both on-site and off-site. Nonetheless, according to the complaint, on numerous occasions between December 2008 and January 27, 2009, Pithyou picked plaintiff up at Lawrence Hall and consumed alcohol and marijuana with him. She also drove him to retail stores where she purchased clothing and cellular telephones for him. From January 27, 2009, to February 23, 2009, Pithyou on various occasions engaged in oral sex and intercourse with plaintiff.

¶ 5    In April 2009, plaintiff filed a complaint against defendant alleging negligent supervision (count I) and intentional infliction of emotional distress (count II) in connection with the

alleged sexual misconduct perpetrated by Pithyou while plaintiff was a resident student at Lawrence Hall. Defendant filed a motion to dismiss. The circuit court granted the motion to dismiss without prejudice.

¶ 6     Plaintiff then filed an amended complaint in December 2009, and defendant filed a motion to dismiss pursuant to section 2-619. This is the motion at issue here. After hearing oral arguments by both parties, the court granted defendant's motion to dismiss.

¶ 7     In the amended complaint, plaintiff again alleged both negligent supervision and intentional infliction of emotional distress.[1] He alleged that defendant employed Pithyou and that Pithyou was his teacher. He alleged that he violated the school's regulations regarding curfew and the consumption of alcohol and drugs by sneaking out to meet Pithyou, who would take him away from Lawrence Hall and purchase and consume alcohol and marijuana with him. He also alleged that Pithyou would engage in oral sex and intercourse with him. Further, plaintiff alleged that "various employees of defendant" observed him coming home after curfew intoxicated and under the influence of drugs. He alleged:

"[N]umerous employees and agents of defendant's comprehensive treatment, educational and residential program were aware that minor plaintiff was receiving gifts from defendant's agent and employee, Linda Pithyou, as well as staying out all night, staying out past curfew with defendant's agent, and was coming back to [defendant's] facility under the influence of alcohol and/or drugs."

He argued that defendant had a special relationship with plaintiff as a voluntary custodian and protector and that, as a direct result of the special relationship, defendant had a duty to protect plaintiff "from a criminal attack by a third person, its employee and agent, Linda Pithyou." He argued that, even though defendant had this duty, it was nonetheless guilty by and through its agents, servants, and employees of one or more of the following negligent acts and/or omissions:

"(a) failed to report suspicions of abuse pursuant to 325 ILCS 5/4;

(b) failed to supervise the minor plaintiff, JOHN DOE, to ensure compliance with its curfew regulations;

(c) allowed the minor plaintiff, JOHN DOE, to remain outside its residential treatment centers over night, despite no prior authorization to do so;

(d) failed to enforce its policy regarding consumption of alcohol and/or use of recreational drugs;

(e) failed to properly supervise the minor plaintiff, JOHN DOE, by failing to discover that its employee, Linda Pithyou, was picking up the minor plaintiff, JOHN DOE, in a car after school hours and returning him after curfew;

(f) failed to establish policies for its teachers regarding boundaries with the at-risk children, including the minor plaintiff, JOHN DOE, that they are servicing, including

---

[1]The trial court eventually dismissed both counts of the lawsuit, but plaintiff only appeals the dismissal of his claim for negligent supervision. Accordingly, we discuss only that claim in this order.

having no private outside contact with these children without prior express approval;

(g) failed to properly monitor the activities of its agent and employee, Linda Pithyou, regarding outside contact with its protectees, including the minor plaintiff, JOHN DOE;

(h) failed to appreciate the grooming techniques being employed by its agent and employee, Linda Pithyou, toward the minor plaintiff, JOHN DOE; [and]

(i) failed to train its staff in its comprehensive treatment, education and residential program of the potential for abuse of its protectees by defendant's agents who are grooming them by virtue of buying them gifts."

He alleged that, as a direct and proximate cause of one of the aforementioned acts, plaintiff suffered various injuries. He asked for judgment against defendant and a sum in excess of $50,000 plus the costs of the lawsuit.

¶ 8        Thereafter, defendant filed a motion to strike plaintiff's first amended complaint or, in the alternative, to dismiss the first amended complaint pursuant to sections 2-615 and 2-619. Defendant contended that plaintiff's amended pleading was legally insufficient because: (1) it failed to state a cause of action for intentional infliction of emotional distress where defendant could not be held legally responsible for the intentional acts of a former employee which were outside the scope of her employment responsibilities as an educator; and (2) defendant owed no duty to plaintiff to protect him from illegal, criminal, or sexual conduct by a teacher that occurred off of school grounds.

¶ 9        Alternatively, defendant contended that, pursuant to section 2-619, plaintiff's claims were barred by the Illinois School Code (105 ILCS 5/24-24 (West 2010)), which provides immunity from liability for negligence and requires the plaintiff to prove wilful and wanton misconduct in order to recover. It argued that, because Pithyou acted completely outside the scope of her employment with defendant, there can be no claim under a *respondeat superior* argument. Defendant contended that plaintiff's complaint, which alleged negligent supervision by defendant, was insufficient because it related to the conduct of the school and the school children, which is protected under section 24-24.

¶ 10       In May 2010, the trial court granted defendant's motion to dismiss count II of the first amended complaint for intentional infliction of emotional distress and took the negligent supervision count (count I) under advisement. Soon after, the court issued a memorandum order granting the motion to dismiss count I. The court found that: (1) the doctrine of *respondeat superior* did not apply because the sexual misconduct by Pithyou was not within the course and scope of her employment; and (2) the Illinois School Code provided immunity to defendant against claims for negligent supervision. Regarding the doctrine of *respondeat superior*, the court reasoned:

"In this case, there is no evidence that the Defendant, independent from the actions of Linda Pithyou, condoned, benefitted or encouraged Pithyou in acting outside the scope of her employment with the minor plaintiff. Rather, the case law on this matter establishes that since criminal sexual abuse/assault is personally motivated, it is outside the scope of employment. There is no evidence to indicate that the acts of Pithyou fell within the scope of her employment. The matters alleged in this case fall in the category of intentional tortious acts designed to carry out an independent purpose by Pithyou and

-4-

they thus were not within the course and scope of his employment with Defendant Lawrence Hall Youth Services. In proceeding to sexually assault and offer drugs to the minor Plaintiff, John Doe, Pithyou was advancing a completely personal objective. The sexual assaults could advance no conceivable purpose of Defendant. This Court finds that Linda Pithyou acted for personal reasons only and thus her acts were beyond the course and scope of employment and could in no way be interpreted as an act in furtherance of the business interests of Defendant Lawrence Hall Youth Services."

¶ 11 Regarding the applicability of the Illinois School Code to the case at bar, the court found:

"The evidence clearly demonstrates that defendant was registered by the Illinois State Board of Education at the time of plaintiff's alleged injuries and thus was operating the school pursuant to the Illinois School Code. As such, defendant is protected by Section [34-84a] *** *in loco parentis* status to teachers, certified education employees and other staff for matters relating to the conduct of the schools and school children. This Court finds that defendant stands in the shoes of an *in loco parentis* and thus, the statute confers immunity from liability for negligence arising out of plaintiff's actions."

¶ 12 Thereafter, plaintiff filed a motion for reconsideration, which the court denied. Plaintiff appeals.

¶ 13                                                    ANALYSIS

¶ 14 Plaintiff contends that the trial court erred in granting the motion to dismiss where defendant is not entitled to the protection of section 34-84a of the Illinois School Code.[2] Alternatively, plaintiff contends that, even if defendant is not entitled to such immunity, the motion to dismiss should not have been granted where defendant was liable for the behavior of its employees. For the following reasons, we disagree.

¶ 15 A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2010)) challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and we construe the allegations in the complaint in the light most favorable to the plaintiff. *Marshall*, 222 Ill. 2d at 429. A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). We review an order granting or denying a section 2-615 motion *de novo*. *Marshall*, 222 Ill. 2d at 429.

_____

[2]Both the parties and the trial court referred to section 24-24 of the Illinois School Code regarding the issue of Lawrence Hall's immunity against claims of negligence. Section 24-24 applies to cities with a population of fewer than 500,000. 105 ILCS 5/24-24 (2010). Section 34-84a, which is identical in form and substance to section 24-24, applies to cities like Chicago with a population greater than 500,000. 105 ILCS 5/34-84a (West 2010). There is no substantive difference between these statutory sections. See *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 172 (1976); *Doe v. Chicago Board of Education*, 339 Ill. App. 3d 848, 853 (2003). Accordingly, we refer herein to section 34-84a.

¶ 16    A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's complaint but asserts affirmative defenses or other matter that avoids or defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). An " '[a]ffirmative matter' is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997). All properly pleaded facts are accepted as true and a reviewing court is concerned only with the question of law presented by the pleadings. *Thornton v. Shah*, 333 Ill. App. 3d 1011, 1019 (2002). Rulings on section 2-619 motions are reviewed *de novo*. *DeLuna*, 223 Ill. 2d at 59.[3]

¶ 17                    I. The Illinois School Code Applies in This Context

¶ 18    Because the Illinois School Code applies here, the complaint was legally insufficient, and it was proper for the trial court to grant the motion to dismiss pursuant to section 2-619. Section 34-84a of the Illinois School Code provides in part:

> "Subject to the limitations of all policies established or adopted under Section 14-8.05, teachers, other certificated educational employees, and any other person, whether or not a certificated employee, providing a related service for or with respect to a student shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." 105 ILCS 5/34-84a (West 2010).

¶ 19    Section 34-84a of the Illinois School Code extends *in loco parentis* status to teachers and other certified educational employees for matters relating to the conduct of the schools and school children. 105 ILCS 5/34-84a (West 2010); *Plesnicar v. Kovach*, 102 Ill. App. 3d 867 (1981) (section 34-84a confers upon educators *in loco parentis* status, and this statute extends to nondisciplinary as well as disciplinary matters). Since this statute specifically confers upon educators the status of parent or guardian to the students and since a parent is not liable for injuries to his child absent wilful and wanton misconduct, it therefore follows that the same standard applies as between educator and student.

¶ 20    Here, the record includes a sworn affidavit by Mark Nufer, vice president of finance for Lawrence Hall, in which he avers that defendant is registered with the Illinois State Board of Education and was approved to provide education services to John Doe during the time of the alleged occurrences. Nufer also averred that defendant possesses a nonpublic facility placement contract for plaintiff, which placed him at "Lawrence Hall's school pursuant to section 14-7.02 of the Illinois School Code and mandates that Defendant operate the school pursuant to the Illinois School Code."

---

[3]The trial court dismissed count II of the amended complaint following oral argument on May 27, 2010. Here, plaintiff only contests the dismissal of count I for negligent supervision.

-6-

¶ 21    The record also includes a letter sent from the Illinois State Board of Education to the vice president of Lawrence Hall, stating:

> "The evaluation of the Application for Eligibility of Nonpublic Programs to Serve Students with Disabilities under Section 14-7.02 of the School Code submitted by your agency is complete. A copy of the approved application and all its required attachments is enclosed. In accordance with changes to the 23 Illinois Administrative Code 401, your program has been granted approval for both 2007-2008 and 2008-2009."

¶ 22    The trial court did not err in finding that defendant falls within the protection of section 34-84a of the Illinois School Code. The evidence shows that defendant was registered by the Illinois State Board of Education at the time of plaintiff's alleged injuries, and, accordingly, was operating a school pursuant to the Illinois School Code. Section 34-84a of the Illinois School Code confers *in loco parentis* status to teachers, certified education employees, and other staff for matters relating to the conduct of the schools and school children. Defendant stands in the shoes of an *in loco parentis,* and that status confers immunity from liability for negligence arising out of defendant's actions unless plaintiff can prove wilful or wanton misconduct by defendant.

¶ 23    Plaintiff's reliance on *Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill. 2d 467 (1992), does not persuade us differently. *Sidwell* is a premises liability case. *Sidwell*, 146 Ill. 2d at 469. In *Sidwell*, the plaintiff alleged that the school district allowed a rut to form on the school playground and the plaintiff, while attending the school, sustained injuries when he fell into the rut. *Sidwell*, 146 Ill. 2d at 469. The trial court granted the school district's motion to dismiss the complaint based on the district's immunity under the School Code. *Sidwell*, 146 Ill. 2d at 469. Our supreme court, however, reversed, holding that the school district's alleged negligence in allowing the rut to form was distinct from the teacher's negligence in allowing the plaintiff to use the rutted part of the playground. *Sidwell*, 146 Ill. 2d at 473. Therefore, the School Code did not protect the school district from liability for the negligent acts alleged. *Sidwell*, 146 Ill. 2d at 473. *Sidwell* is inapposite to the case at bar where, unlike *Sidwell*, plaintiff here does not allege that defendant's premises contain a dangerous condition or that it furnished plaintiff with defective equipment. Rather, plaintiff claims that defendant's employees negligently supervised him, allowing him to sneak off campus and engage in illicit activities. The trial court properly held that the School Code bars such a claim against defendant.

¶ 24    II. The Trial Court Did Not Err in Finding No *Respondeat Superior* Liability

¶ 25    Even if defendant were not granted immunity under the Illinois School Code, we would still find that the trial court did not err in granting the motion to dismiss pursuant to section 2-615 of the Code where Illinois law does not recognize a cause of action for negligent supervision of a student by an educator such as defendant. Plaintiff argues that the trial court erred in construing count I as "alleging *respondeat superior* liability as a basis for the claims of negligence as to defendant Lawrence Hall Youth Services." According to plaintiff, the complaint only alleges the negligent supervision by "agents and employees of Lawrence Hall Youth Services in supervising and monitoring plaintiff during non-school hours" rather than

the negligence of Linda Pithyou for, among other things, sexually assaulting plaintiff. We disagree and find that the trial court did not err where the issue of *respondeat superior* must necessarily be addressed based on plaintiff's allegations that defendant, through its "various agents and employees," including Pithyou, negligently supervised plaintiff, causing him injury.

¶ 26     An employer may be held liable for the acts of its employees under the doctrine of *respondeat superior*. See *Hargan v. Southwestern Electric Cooperative, Inc.*, 311 Ill. App. 3d 1029, 1031 (2000) (citing *Moy v. County of Cook*, 159 Ill. 2d 519, 524 (1994)); see also *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 677 (1998) (these acts may include " ' "negligent, wilful, malicious or even criminal acts of its employees" ' " (quoting *Deloney v. Board of Education*, 281 Ill. App. 3d 775, 784 (1996), quoting *Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 1006 (1985))). The employer will be responsible, however, only when the employee's acts were committed within the scope of his employment. See *Montgomery v. Petty Management Corp.*, 323 Ill. App. 3d 514, 517 (2001) (citing *Pyne v. Witmer*, 129 Ill. 2d 351, 359 (1989)); accord *Hargan*, 311 Ill. App. 3d at 1031 (it is of no concern whether employee's act is intentional or negligent). While "scope of employment" is not precisely defined, our courts apply the following three criteria as found in the Restatement (Second) of Agency to determine whether a certain act is within the scope and, thus, attributable to the employer:

> " '(a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits; [and]
>
> (c) it is actuated, at least in part, by a purpose to serve the master[/employer.]
> ***

   *** (Restatement (Second) of Agency § 228 (1958).)' " *Montgomery*, 323 Ill. App. 3d at 517 (quoting *Pyne*, 129 Ill. 2d at 360).

¶ 27     Again, it is only when these criteria are met–when the employee's acts were committed within the scope of his employment and in furtherance of the business of the employer–that an employer will be held responsible for its employee's actions. See *Montgomery*, 323 Ill. App. 3d at 517 (according to Restatement (Second), conduct is not within scope if these factors are not present); *Hargan*, 311 Ill. App. 3d at 1031 (it is only when these are met that employer will be held responsible); *Stern*, 299 Ill. App. 3d at 677-78 (distinguishing between "detour" where employee's deviation for personal reasons is still sufficiently related to employment so employer can be held liable, and "frolic" where employee's personal business is unrelated to employment, exceedingly marked and unusual and therefore unattributable to employer). The burden is on the plaintiff to show the contemporaneous relationship between the tortious act and the scope of employment. See *Pyne*, 129 Ill. 2d at 360; *Montgomery*, 323 Ill. App. 3d at 517-18; *Hargan*, 311 Ill. App. 3d at 1032; *Stern*, 299 Ill. App. 3d at 677.

¶ 28     Our holding in *Deloney* solidifies our view on the particular issue of whether employers are vicariously liable for sexual assaults committed by their employees. See *Stern*, 299 Ill. App. 3d at 679-80 (*Deloney* "provides an exhaustive review of cases involving 'scope of employment' as a basis for determining whether employers are vicariously liable for sexual

assaults committed by their employees."). In the underlying suit involved in that case[4], a truant officer allegedly sexually assaulted a student under the guise of reviewing her enrollment application. The student filed suit based on these actions, which she claimed occurred while the officer was employed by the school board and were within the scope of his employment. In our comprehensive disposition on that case, we began by noting that the term "scope of employment" excludes conduct by an employee that is solely for his own benefit. See *Deloney*, 281 Ill. App. 3d at 784. Then, upon reviewing the facts at hand, we reasoned that the allegations of sexual misconduct, even if true, had no relation to the officer's job duties and were committed, if at all, for his personal gain. See *Deloney*, 281 Ill. App. 3d at 786. This made his actions outside the scope of employment "as a matter of law" and, therefore, not attributable to the board, even though the officer's employment provided the opportunity for his misconduct (*i.e.*, using the guise of reviewing the student's application). *Deloney*, 281 Ill. App. 3d at 786, 788 ("by no stretch of the imagination could his actions be deemed an extension, albeit unlawful, of his functions or responsibilities as a truant officer"). Ultimately, based on this, we held that criminal sexual assault, by its very nature, precludes the conclusion that it was committed within the scope of employment under the doctrine of *respondeat superior* and, thus, an employer cannot be responsible when an employee is said to have committed it. See *Deloney*, 281 Ill. App. 3d at 783, 786 n.5 ("in Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment").

¶ 29    This holding was later affirmed in *Stern*, which also reexamined many of the vicarious liability cases involving sexual assaults upon which *Deloney* relied. In *Stern*, two women claimed that a hotel's masseurs sexually assaulted them during their massages and brought suit based on these actions against the hotel asserting vicarious liability. The *Stern* court, citing *Deloney* and its progeny, found, as a matter of law, that the hotel was not liable for the actions of the masseurs since those actions could not be within the scope of their employment. See *Stern*, 299 Ill. App. 3d at 680-81. This was because, concluded the court, there was no way to interpret the sexual assaults by the masseurs-employees as acts in furtherance of the business interest of, or even foreseeable by, the employer-hotel. See *Stern*, 299 Ill. App. 3d at 679-81 (and cases cited therein holding same); accord *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 967 (1988) (dismissal of the plaintiffs' complaint for failure to state cause of action was proper where plaintiffs alleged day care center was responsible for sexual assault of girl by teacher's aide pursuant to *respondeat superior*; molestation was deviation from aide's scope of employment and had no relation to center's

---

[4]*Deloney* principally involved the recovery of attorney fees and costs as against a school board incurred by a law firm in its successful representation of the board's former employee in a civil rights action. The trial court granted summary judgment in favor of the board and we affirmed, finding that while the board's duties to indemnify the employee were triggered, the acts alleged against the employee were outside the scope of his employment such that the board owed no statutory duty to defend him in the underlying case, which involved an alleged sexual assault. See *Deloney*, 281 Ill. App. 3d at 786. It is this latter portion of the holding which applies to the instant case and with which we concern ourselves here.

business); *Webb*, 137 Ill. App. 3d at 1008 (sexual molestation of the plaintiff by supermarket security guard during search of the plaintiff was a deviation from job duties such that it had no relation to furtherance of business and supermarket could not be held liable); *Hoover v. University of Chicago Hospitals*, 51 Ill. App. 3d 263, 266 (1977) (physician's sexual assault of patient not act in furtherance of hospital's business; therefore, hospital could not be liable and patient's complaint against it was properly dismissed for failing to state cause of action).

¶ 30    We find no reason to deviate from this established line of case law here. The allegations plaintiff makes against Pithyou cannot be imputed to defendant. As *Deloney* and *Stern* make clear, sexual assault *by its very nature* precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of *respondeat superior*. See *Deloney*, 281 Ill. App. 3d at 783, 786 n.5 ("in Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment"). That is, Pithyou's alleged sexual assault of plaintiff cannot be said to have furthered defendant's business. Accordingly, as a matter of law, defendant is not liable for Pithyou's actions since they were not within the scope of her employment. The trial court correctly determined that the conduct alleged "fall[s] in the category of intentional tortious acts designed to carry out an independent purpose by Pithyou and they thus were not within the course and scope of [her] employment with defendant."

¶ 31    In addition, defendant is not liable for personal injuries sustained by a student absent wilful and wanton misconduct. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d at 173; *Doe v. Chicago Board of Education*, 339 Ill. App. 3d at 853. Here, plaintiff does not allege wilful or wanton misconduct, but rather alleges that he and defendant had a "special relationship" and that, as a voluntary custodian, defendant owed a duty to protect plaintiff from criminal attacks by its employee.[5] However, schools and teachers "cannot supervise each and every child at all times while in school or while engaged in a school-related activity." *Albers v. Community Consolidated No. 204 School*, 155 Ill. App. 3d 1083, 1086 (1987). Nor are schools and teachers required to guard against the unanticipated willful and wanton misconduct by others. See *Albers*, 155 Ill. App. 3d at 1086 ("schools and teachers cannot be charged with the duty of anticipating and guarding against the wilful and wanton misconduct by other children who suddenly and apparently without provocation attack other students").

¶ 32    Plaintiff's reliance on *Wallace v. Smyth*, 203 Ill. 2d 441 (2002), to argue that the Illinois School Code does not apply to a residential care facility fails to persuade us differently. *Wallace*, however, is inapposite to the case at bar where *Wallace* did not involve an education facility subject to the Illinois School Code, but, rather, a licensed residential child care facility for state wards. *Wallace*, 203 Ill. 2d at 443.

¶ 33    The trial court did not err where it granted defendant's motion to dismiss pursuant to sections 2-619 and 2-615 of the Code.

---

[5]To the extent that plaintiff could argue that he alleged willful or wanton misconduct via his count II allegations for the intentional infliction of emotional distress, he has expressly waived appeal of that issue.

¶ 34                                        CONCLUSION

¶ 35        For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 36        Affirmed.